## CAMMANN v. TOMPKINS.

The affidavit in support of an application for an attachment, averring the party's belief in the existence of facts which warrant the issuing of an attachment, should disclose the ground of such belief, to enable the judge to whom the application is made to form a belief on the subject.

An attachment granted on an insufficient affidavit will be set aside on motion. But—

Where the motion to set aside an attachment is made upon affidavits on the part of the defendant, the plaintiff may introduce affidavits on his part, and if, by all the affidavits in the case, sufficient appears to warrant the issuing an attachment, the court will not set it aside for any insufficiency in the affidavit on which it issued.

What is a concealment to avoid service of process.

THE material facts appear by the decisions.

*Edmonds, J.:* The original affidavits in this case (*Cammann* v. *Tompkins*) were scarcely enough to warrant the attachment. The fact of concealment is not positively sworn to, but simply the plaintiff's belief that the defendant kept himself concealed to avoid the service of a summons. We have already held that the averment of a belief is not enough. The grounds of the belief must be set out, so that the judge who issues the warrant may have such belief, and the court may be able to determine whether in any one it would be well grounded.

The only grounds for the belief given in these affidavits are that diligent inquiry had been made for the defendant, that he was not to be found, nor could it be ascertained whither he had gone. It is not stated *where* the inquiry was made,

nor *when,* nor of *whom,* nor *anything* to enable the judge or the court to determine whether the inquiry had indeed been diligent, and conducted in good faith.

To allow an attachment upon such an affidavit would subject almost every one to the process, at some time or another, for there is scarcely a man in business of whom the same might not at some time be truly said.

This consideration, however, is not very material, for we have already held, in another case, that where the motion to set aside an attachment is made on affidavits on the part of the defendant, the plaintiff may introduce counter affidavits and bolster up his case. It is only where such a motion is made on the original affidavits alone, that the plaintiff is precluded from strengthening his case by amendments or additions.

In this case other affidavits are offered on both sides, and the question before me is whether in them, as well as the original affidavits, sufficient grounds for sustaining the attachment are to be found.

The right to the process in this suit is not founded on an alleged departure from the State, but on a concealment within the State, and not with an intent to defraud creditors, but with an intent to avoid the service of a summons.

It is not necessary that a summons should have been issued, and an ineffectual attempt to serve made. It was enough if the party intentionally so disposed of himself that one could not have been served; nor is it of any consequence, as suggested, that the defendant could have had no object in avoiding the service of process, because such service, on that day, could have been of no advantage to the plaintiff. It was enough, under the statute, if there was an actual intention to avoid such service.

And such intention is a matter to be judged of by the court, from all the facts of the case, and is not to be controlled solely by the avowed object of the defendant.

It appears that at two o'clock, on the day of defendant's failure, when, as he stated, the knowledge that he must fail

came upon him like an avalanche, he left his place of business and gave directions for his counsel to meet him at a place where he would not be likely to be looked for by any of his creditors.

He did not inform his clerk, whom he left in charge of his office, where he would be found. After going to the bank, and drawing out all the money he had there, he did not return to his office, though an hour, at least, would elapse before· the business would close for the day, and when it would be expected that he might be absent from his office. But he retired to an obscure tavern in Hudson street, where his creditors would not be at all likely to inquire for him.

There, instead of remaining in the public bar-room, he retired to a private sitting-room, and there seems to have remained alone for at least two hours, until his counsel arrived. And it would seem that for at least nine hours, that is, from about three o'clock in the afternoon until about midnight, he remained at that tavern, and in that private room, no person, either at his place of business, or at his dwelling, being able to tell to inquiring creditors, or officers having process, where he was to be found.

During all that time he was as much concealed from his creditors, and from officers having process to serve upon him, as he well could have been.

Now the question is, whether, from these facts, we have a right to infer that he intended such concealment.

Men are supposed to intend the natural and necessary consequences of their acts.

The defendant avers that his object was to avoid distressing his family by meeting his counsel at home. That may have been his original object in going to that tavern, as he avows, but it could not have been his object in remaining there for hours after his house was in possession of an officer; nor could his remaining there so many hours have been necessary for the purpose of consulting his counsel, nor was it necessary for these purposes that he should have concealed from his family, at his dwelling, and from his clerk at his office, where he was

during all that time.   It is that concealment which leaves on the mind the impression that there was, during a part of the time, at least, an intention to keep out of the way, and that it is which works out the authority for the attachment.

Indeed it is quite manifest from all the papers, and especially from those on the part of the defendant, that his object in going to and remaining at Kipp's tavern, was to make the disposition of his property that he did, and so secure to himself the time and opportunity of doing so without molestation from his creditors.   By doing so he did avoid the service of a summons.   One was sent to his house to be served, and its service was prevented by his concealment at Kipp's.   It was not, indeed, necessary that an abortive attempt should have been made to serve a summons.   I allude to the fact in order to show that the service was avoided by the defendant's lingering so many hours at that place, and that, if he had an intention to avoid it, he most effectually carried it out.   Add to this consideration the facts that no member of his household, no person in his employment, knew where he was, or could direct his creditors where to find him, and that his friend Kipp, who had been with him at the tavern that afternoon, refused to tell the officer who had the process where he was to be found, and we have a strong case of that concealment which the law evidently aims at.

It is a concealment to avoid the service of process, no matter whether for an hour, a day, or a week; no matter whether with a view to defraud creditors, or merely to have time to make a disposition, lawful or otherwise, of his property before his creditors got at him.   It is placing himself designedly so that his creditors cannot reach him with process, and that, it seems to me, is clearly the concealment which the statute contemplates.

I do not attach much consequence to the fact that when at midnight the defendant was told an officer was at his house to arrest him, he immediately sought out the officer.   After that there was undoubtedly no concealment.   But that does not show there was none before that.   The purpose for which he

had, up to that hour, remained away from his office and his house, was answered. He had succeeded in disposing of his property without any molestation from his creditors. He had avoided the service of a summons, and it seems to me that I should nullify the beneficial objects of the statute if I should hold that this was not such a concealment as to justify an attachment.

I must, however, notice another objection considered in the argument: that, namely, to the form of the attachment. We have already held that the usual form in which attachments are issued, as process running in the name of the judge, and signed by him, is wrong. The attachment is process in the progress of the cause, and, like the subpena, execution, and the like, must issue in the name of the people, and have the clerk's and attorney's names signed to it, and be allowed by the judge.

It cannot issue without his allowance, but when it does it issues as a writ or ordinary process.

It might as well be asked of a judge to sign a habeas corpus or certiorari, or an attachment for contempt, or the like, and have them run in his name.

It is now nearly, if not quite, a year since we so held, yet I do not recollect that I have ever yet seen an attachment made out or issued in any other form than that which the law stationers have pleased to give the profession. But I cannot disregard the decision of the court, if the bar do, and for that cause this attachment might be set aside, were it not for the power of amendment conferred upon the court.

That power ought to be exercised in this case, for it would not be right to jeopard the interest of the plaintiffs, by reason of an objection merely formal, and no way affecting the merits. But this error in form will deprive the plaintiffs of the costs of this motion, to which, otherwise, they would be entitled.

An order, therefore, will be entered denying the motion to vacate the attachment without costs, provided within ten days

the plaintiffs amend their process; and, in case they do not, then granting the motion with costs.